John R. BEAN and Pauline C. BEAN
*v.* Jessie C. JOHNSON

83-36                                     649 S.W.2d 171

Supreme Court of Arkansas
Opinion delivered April 25, 1983

*Wilson, McNee & Vaughan, P.A.*, by: *Keith Vaughan*, for appellants.

*Shackleford, Shackleford & Phillips, P.A.*, for appellee.

RICHARD B. ADKISSON, Chief Justice. This case involves a land dispute regarding an easement of ingress and egress. Appellants, John and Pauline Bean, are the owners of an

easement over land belonging to appellee, Jessie C. Johnson. This easement was established in 1977 by a Calhoun County Chancery Court order which determined the respective rights of the parties:

> . . . that title in and to the lands described in the complaint herein be, and hereby is, quieted and confirmed in the defendants, Jessie C. Johnson and Evie Lou Johnson; that the plaintiffs have a personal easement across the said lands to reach their respective properties, this easement being a personal one, extending only to plaintiffs [John R. and Pauline C. Bean] and their social invitees; and that the plaintiffs are enjoined and restrained from exercising any acts of ownership or dominion over the said lands belonging to the defendants, Jessie Johnson and Evie Lou Johnson.

In 1980 appellants brought suit again, alleging that appellee had interfered with the easement granted in the 1977 order, interfered with appellants' property, interfered with a prospective contract to sell their property, and had trespassed on appellants' easement. Appellants requested damages, an injunction, and that appellee be held in contempt. The trial court refused to grant the relief requested, but elaborated on its former decision by stating:

> The plaintiffs, John R. Bean and Pauline C. Bean, have a personal easement across the lands of the defendant, Jessie C. Johnson, that extends to them and to their social invitees. *However, if social invitees of plaintiffs attempt to use the easement when the plaintiffs are not present, then such social invitees shall first report to the defendant, Jessie C. Johnson, that they are going to use the easement and shall furnish to the defendant written proof that they are, in fact, social invitees of the plaintiffs.* [Emphasis supplied]

It is from this ruling that appellants bring this appeal.

The relevant facts are as follows: Appellants live in Central Arkansas and own a cabin on Champagnolle Creek

in South Arkansas. The easement in question is a road which is the only means of access to appellants' property. It is located on property which appellee lives on and owns. Problems arose over this easement when appellants gave various "social invitees" permission to go on their property but did not accompany them. Testimony at trial indicated that when various "invitees" arrived, appellee told them that they were trespassing and ordered them off the property. Appellee testified he did this because he understood the 1977 order to mean that social invitees could come on the property only if appellants were with them. Appellee testified that he checked on anybody that visited the property even when it was dark. "When they make the turnaround, make the complete turnaround and come out I'd check them. That's my business." Relatives of appellants who were checking on the property for appellants testified that shortly after they drove up to the property, appellee walked over and told them they were trespassing and threatened to have them arrested if they came back. A prospective purchaser of the property testified that appellee told him that his son could use the property only if he [the buyer] were there, which was the main reason he decided not to purchase the property.

Appellants argue that the chancellor's ruling which required appellants' social invitees to first report to appellee and to furnish him with written proof that they were in fact social invitees unduly restricted their right to the use of their easement. We agree. When an easement exists, the rights of both parties are reciprocal, and respective owners must use the easement in a manner that will not interfere with the other's rights to utilization and enjoyment of the property. *Davis* v. *Arkansas Louisiana Gas Co.*, 248 Ark. 881, 454 S.W.2d 331 (1970). RESTATEMENT OF PROPERTY, § 481 (1944) states:

As the extent of the easement becomes more difficult to discover, the relations between the owner of it and the possessor of the servient tenement become increasingly subject to the governing principle that neither shall unreasonably interfere with the use of the land by the other. ...The determination as to what constitutes an

unreasonable interference on the part of the possessor of the servient tenement with the use of the land by the owner of the easement depends primarily upon a consideration of the relative advantage to him of his desired use and the disadvantage to the owner of the easement.

Here, the disadvantage caused to appellants by requiring either their presence or their written permission before social invitees can use the easement is greater than any advantage appellee might gain by being allowed to stop and check all unaccompanied social invitees. Therefore, it was error for the chancellor to place such restrictions on appellants' easement. Appellants and their social invitees must be allowed unrestricted use of the easement without interference by appellee.

Appellants also argue that the trial court erred in dismissing their prayer for damages for interference with prospective contract. Testimony at trial revealed that appellants had put the property up for sale and had at least one prospective purchaser who was seriously considering buying the property until he talked with appellee concerning the easement. Although we recognized in *Mason* v. *Funderburk,* 247 Ark. 521, 446 S.W.2d 543 (1969) that damages can be recovered for interference with a prospective contract, appellants failed to prove the necessary elements of damage. The only proof going to the element of damage was that appellants were asking $9,500 for the tract and that the prospective purchaser might have paid $8,000 for it. There was no proof of what appellants had paid for the tract or what its fair market value was, and, as a result, no proof of the loss of a prospective profit. *See* RESTATEMENT OF TORTS, § 774 A (1979). Therefore, the trial court did not err in dismissing the damage portion of appellants' complaint.

Affirmed in part; reversed in part.